**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 14-CIV-24502-BLOOM/Valle
14-CIV-20933-BLOOM/Valle

ALEXANDER GONZALEZ, on behalf of himself
and others similarly situated,

      Plaintiff,

v.

DYNAMIC RECOVERY SOLUTIONS, LLC,

      Defendant.

_____/


LUIS RODRIGUEZ, on behalf of himself
and others similarly situated,

      Plaintiff,

v.

DYNAMIC RECOVERY SOLUTIONS, LLC,

      Defendant.

_____/


**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT**

      The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., is a comprehensive statute that prohibits a catalog of activities in connection with the collection of debts by third parties. The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. §1692(k). The provisions of the FDCPA

declare certain rights available to debtors, forbid deceitful and misleading practices, and prohibit harassing and abusive tactics.

On March 12, 2014, Luis Rodriguez ("Plaintiff Rodriguez") filed a class action complaint before this Court (the "Rodriguez Action") against Defendant Dynamic Recovery Solutions, LLC ("DRS"), asserting putative class claims arising under the FDCPA, 15 U.S.C. § 1692, *et seq*. Dkt. No. 1. Plaintiff Rodriguez alleged that DRS violated 15 U.S.C. § 1692d(6) and 15 U.S.C. § 1692e(11) by making debt collection phone calls to consumers in Florida where DRS failed to disclose that it was a debt collector calling to collect a debt, and otherwise failed to meaningfully disclose its identity. *Id.*

On April 29 2014, Alexander Gonzalez ("Plaintiff Gonzalez") (Plaintiff Rodriguez and Plaintiff Gonzalez are sometimes jointly hereinafter referred to as "Plaintiffs") filed a class action complaint (the "Gonzalez Action") against DRS in the United States District Court for the Western District of Washington, Case No. 2:14-cv-00634-RAJ, asserting putative class claims arising under the FDCPA. Plaintiff Gonzalez alleged that DRS violated 15 U.S.C. § 1692d(6) and 15 U.S.C. § 1692e(11) by making debt collection phone calls to consumers in Washington where DRS failed to disclose that it was a debt collector calling to collect a debt, and otherwise failed to meaningfully disclose its identity.[1]

Following extensive discovery and motion practice, and the filing of a renewed motion for class certification by Plaintiff Rodriguez in the Rodriguez Action, Dkt. No. 49, the parties reached an agreement to settle this matter, memorialized by a written agreement dated December 31, 2014, and now seek preliminary approval of the settlement. The Class Action Settlement

---

[1]    The Gonzalez Action has since been transferred to this Court, and consolidated with the Rodriguez Action for settlement purposes (the Rodriguez Action and the Gonzalez Action will be hereinafter referred to as the "Lawsuit"). Dkt. No. 54.

Agreement (the "Settlement Agreement") and its exhibits are attached to the Declaration of James L. Davidson, filed herewith.

As more specifically set forth in the Settlement Agreement, the Settlement calls for an injunction that will compel DRS to comply with 15 U.S.C. § 1692d(6) and 15 U.S.C. § 1692e(11) on a nationwide basis. The Settlement also requires DRS to make a *cy pres* payment in the amount of $15,000 to a legal aid organization in Florida. In addition, DRS will pay $1,000 to each of Plaintiff Rodriguez and Plaintiff Gonzalez as statutory damages pursuant to 15 U.S.C. § 1692k, and any incentive award that may be awarded to each Plaintiff by the Court up to an additional $1,000. Importantly, no member of the proposed Class other than Plaintiff Rodriguez and Plaintiff Gonzalez will release any claims that they may have against DRS as part of the Settlement.

Considering, among other things, the size of the proposed Classes of Florida and Washington consumers, which exceeds 180,700 persons, and the relatively low net worth of DRS, the Settlement, including DRS's agreement to be subject to a nationwide injunction going forward, and a *cy pres* payment that amounts to roughly what the Court could have awarded the Class in statutory damages pursuant to the FDCPA if Plaintiffs had prevailed at trial, represents an excellent outcome. Indeed, had this matter proceeded as a contested matter and had Plaintiffs prevailed on all issues, the following relief could have been awarded: (a) up to but no more than $1,000 in statutory damages to each named Plaintiff; (b) a discretionary incentive award to each named Plaintiff; (c) less than fifteen cents per putative class member in statutory damages; and (d) Plaintiffs' reasonable attorneys' fees and costs. Such relief would have only been obtained if Plaintiffs obtained a certified class, proved liability and prevailed on any appeal.

By settling, Plaintiffs secured prospective relief by way of an injunction, brought about a

resolution to the litigation, limited attorneys' fees and costs, and obtained nationwide injunctive relief prohibiting DRS from engaging in the complained of practice in the future.

Herein, Plaintiffs seek preliminary approval of the Settlement. Specifically, Plaintiffs seek conditional approval of a Settlement Class, the appointment of Plaintiffs as Class Representatives, and the appointment of Greenwald Davidson Radbil PLLC as Class Counsel.

Plaintiffs and their counsel believe that the Settlement is fair, reasonable, and adequate, and in the best interest of the Class. As more fully set forth below, Plaintiffs respectfully request that the Court enter the accompanying order granting preliminary approval of the Settlement. DRS does not oppose this relief.

## SUMMARY OF THE SETTLEMENT

I. **The Settlement provides for a nationwide injunction and a *cy pres* payment, while not requiring any absent Class members to release any claims they may have against DRS.**

The Settlement Agreement defines a settlement class under Rule 23(b)(2) comprised of all persons throughout the United States for whom, between March 12, 2013 and April 28, 2014, DRS left a voice message/voice recording, in connection with an attempt to collect any purported consumer debt, where the caller failed to state that she/he was a debt collector. DRS has identified at least 180,700 Class Members, including Plaintiffs (the "Class").[2]  If the Settlement is approved, then pursuant to the Settlement Agreement, the Court will issue a nationwide injunction pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure requiring DRS to do the following:

- comply with the FDCPA at 15 U.S.C. § 1692d(6) and 15 U.S.C. § 1692e(11) with regard to debt collection phone calls made to consumers

---

[2]  The 180,700 number is comprised of Class Members identified by DRS who reside in Florida or Washington.  The nationwide Class is likely significantly larger in light of DRS's debt collection presence in states other than Florida and Washington.

throughout the United States in that it will (a) disclose that it is a debt collector in all future voicemails it leaves for consumers in connection with the collection of a consumer debt, including voicemails left manually, voicemails left in a prerecorded manner and voicemails left by any third-party that DRS contracts with to make consumer debt collection calls, (b) disclose that it is attempting to collect a debt in all future initial communications that it has with consumers in connection with the collection of a consumer debt, including if the initial communication consists of a voicemail for the consumer; and (c) maintain records evidencing the content of voicemails DRS leaves for consumers in connection with the collection of consumer debt; and

•       designate an individual at DRS whose job responsibilities will include ensuring DRS's compliance with the injunction.

Thus the Settlement will compel DRS to no longer engage in the practice complained of in the Lawsuit anywhere in the country. Importantly, Plaintiffs might not have obtained an injunction if they had gone to trial. *See Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961 (N.D. Ohio 2009) ("This Court agrees that declaratory and injunctive relief are not appropriate under the FDCPA.").[3] But by settling now, Plaintiffs obtained an agreement from DRS that it would be subject to an injunction on a nationwide basis.

Because the FDCPA limits the statutory damages available to a class to 1 percent of the defendant's net worth, were the Class to recover the maximum statutory damages allowable under the FDCPA, such recovery would not be sufficient to justify a class wide distribution, especially when taking into account the costs of administering such a settlement.  Consequently, in lieu of a class wide payment, and as an additional condition of the Settlement, DRS has agreed to make a *cy pres* payment to the Legal Aid Society of Palm Beach County, Inc. in the amount of $15,000.00.  This amount represents the approximate maximum amount of statutory damages under the FDCPA for which DRS could have been liable to the Class if Plaintiffs were to obtain

---

[3]       Internal citations and quotations omitted an emphasis added unless otherwise noted.

class certification, and prevail on the merits at trial and on appeal.

Importantly, and by the express terms of the Settlement Agreement, DRS will only receive releases from the named Plaintiffs in this litigation.  None of the absent Class members will be releasing any claims that they may have against Defendant, and pursuant to prevailing law, those absent Class members' claims are tolled through any final judgment in this case.  *See Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 354-55 (1983) (holding that the commencement of a class action suspends the applicable statute of limitations for all asserted members of the putative class until a class certification decision is made); *Raie v. Cheminova, Inc.,* 336 F.3d 1278, 1282 (11th Cir. 2003) (absent class members will not be prejudiced because the statute of limitations on their claims was tolled upon the commencement of the action).

In addition to the foregoing, DRS will pay $1,000 to each of Plaintiff Rodriguez and Plaintiff Gonzalez as statutory damages pursuant to 15 U.S.C. § 1692k, and will also pay any incentive award that may be awarded to each Plaintiff up to an additional $1,000.  At the time of this Motion, the parties had not reached an agreement on an award of attorneys' fees, costs and expenses to proposed Class Counsel for its work in both cases and in reaching this Settlement. The parties will continue to work to attempt to reach an agreement an award of attorneys' fees, costs and expenses to be presented to the Court for approval.  However, if the parties are unable to reach such an agreement, then, prior to the final approval hearing in this matter, and in line with any schedule set by the Court, proposed Class Counsel will file a motion for an award of attorneys' fees, costs and expenses, which DRS will have the right to oppose in whole or in part. In the event that the parties do not reach an agreement on attorneys' fees, costs and expenses prior to the deadline for proposed Class Counsel to submit its fee, costs expenses petition, proposed Class Counsel will file a fee, costs and expenses petition that seeks no more than

$150,000.00 in fees and expenses.

**II.    Notice is unnecessary and unwarranted given that no absent Class Members'
claims are being compromised.**

Rule 23(b)(2) of the Federal Rules of Civil Procedure authorizes a no-notice class
when final injunctive relief is provided with respect to the class as a whole. *See Jefferson
v. Ingersoll Int'l. Inc.*, 195 F.3d 894, 897 (7th Cir. 1999) ("Rule 23(b)(2) authorizes a no-
notice and no-opt-out class for 'final injunctive relief ... [that operates] with respect to the
class a whole."); *Crawford v. Honig*, 37 F.3d 485, 487 n. 2 (9th Cir. 1995) (observing
that the right to notice does not apply to class actions brought under Rule 23(b)(2));
*Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 506 (5th Cir. 1981) (same); *see also
Doe v. Bush,* 261 F.3d 1037 (11th Cir. 2001), cert denied, 534 U.S. 1104, 122 S.Ct. 903,
151 L.Ed.2d 872 (2002). ("*Bolton* reaffirmed the holding in *Bing* and also recognized
that, as a general matter, a Rule 23(b)(2) class does not require class-wide notice as a
precondition for its existence.").  Here, a no-notice class is appropriate. By the express
terms of the Settlement Agreement, DRS will only receive releases from the named
Plaintiffs in this litigation.  None of the absent Class members will be releasing any
claims that they may have against DRS, and those absent Class members' claims are
tolled through any final judgment in this case.  As absent Class members' claims are not
being compromised by the Settlement, and in light of the circumstances, including DRS's
net worth, sending notice to over 180,000 persons is neither warranted nor practicable.

## THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS

### I.      Legal Standard Under Fed. R. Civ. P. 23

To attain certification of the proposed Class, Plaintiffs must satisfy each of the four requirements of Rule 23(a), referred to as numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a); *Drossin v. National Action Financial Services, Inc.*, 255 F.R.D. 608, 616 (S.D. Fla. 2009) (certifying class action).  Because Plaintiffs seeks to certify the Class under Rule 23(b)(2), they must also demonstrate that DRS "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

"In reviewing a motion for class certification, the court generally is bound to take the substantive allegations of the complaint as true."  *In re Checking Overdraft Litig.,* 281 F.R.D. 667, 672 (S.D. Fla. 2012) (certifying class action).  In certifying a class, the Court should consider that certification is conditional and may be modified or vacated as the case progresses toward resolution on the merits.  Fed. R. Civ. P. 23(c)(1)–(4); *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982).

### II.     The FDCPA is Well-Suited For Class Action Treatment

In enacting the FDCPA, Congress found that "[t]here is abundant evidence of the use of abusive, deceptive and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy."  15 U.S.C. §1692(a).  Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers.

15 U.S.C. §1692(b).

The express purposes of the FDCPA are to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. §1692(e). Designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action. *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) ("The Fair Debt Collection Practices Act prohibits debt collectors from making false or misleading representations and from engaging in various abusive and unfair practices.").

Class treatment of claims under the FDCPA is essential to its statutory structure. "Representative actions, therefore, appear to be fundamental to the statutory structure of the FDCPA. Lacking this procedural mechanism, meritorious FDCPA claims might go unredressed because the awards in an individual case might be too small to prosecute an individual action." *Weiss v. Regal Collections*, 385 F. 3d 337, 345 (3d Cir. 2004). As the Fourth Circuit Court of Appeals recognized, "[w]ithout a real sting, the defendants would be unlikely to be deterred from violating the Act, in light of the substantial profit to be made using aggressive and improper collection practices." *United States v. National Fin. Services, Inc*., 98 F.3d 131, 141 (4th Cir. 1996). Congress, in fact, designated special remedies to unnamed members of a class action filed under the FDCPA. *See* 15 U.S.C. §1692k(a),(b). "This congressional determination warrants judicial attention and respect." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185 (2000).

Moreover, class treatment of FDCPA claims is particularly appropriate because the

FDCPA is a strict liability statute liberally construed in favor of the consumer. *Hepson v. J.C. Christensen and Assoc., Inc.*, 2008 WL 4833097, at *4 (M.D. Fla. Nov. 5, 2008) ("the FDCPA must be liberally construed to support its remedial nature"). To that end, the Eleventh Circuit uses the "least-sophisticated consumer" standard to evaluate whether a debt collector's communication violate the FDCPA. *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1172–1175 (11th Cir. 1985) (discussing the development and application of the "least sophisticated debtor"). The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. *Gionis v. Javitch, Block, Rathbone, LLP*, 238 Fed.Appx. 24, 28 (6th Cir. 2007).

Because of their overwhelmingly common questions of fact and law, numerous district courts have certified class actions, like the instant matter, based on improper voicemail messages in the debt collection context. *See, e.g., Manno v. Healthcare Revenue Recovery Grp.*, 289 F.R.D. 674 (S.D. Fla. 2013) (certifying FDCPA class); *Pawelczak v. Fin. Recovery Services, Inc.*, 286 F.R.D. 381 (N.D. Ill. 2012) (same); *Kimball v. Frederick J. Hanna & Associates, P.C.*, No. 10-130 (MJD/JJG), 2011 WL 3610129 (D. Minn. Aug. 15, 2011) (same); *Drossin*, 255 F.R.D. at 608 (same); *Hicks v. Client Services, Inc.*, No. 07-61822-CIV, 2008 WL 5479111 (S.D. Fla. Dec. 11, 2008) (same). This Court should do the same, particularly in light of Defendant's consent to class certification for settlement purposes.

### III.    Plaintiffs Satisfy the Requirements of Rule 23(a)

In deciding whether to certify a class, a district court has broad discretion. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). Although a district court is not to determine the merits of a case at the certification stage, sometimes "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification

question." *Id.* at 1570 n.11 (*quoting General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

### A.   Numerosity

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  The focus of the numerosity inquiry is not whether the number of proposed class members is "too few" to satisfy the Rule, but "whether joinder of proposed class members is impractical." *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986).  Parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class." *Fuller v. Becker & Poliakoff, P.A.,* 197 F.R.D. 697, 699 (M.D. Fla. 2000).  The Eleventh Circuit has held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate." *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003) (*quoting Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.1986)).  Thus, the "sheer number of potential class members may warrant a conclusion that Rule 23(a)(1) is satisfied." *LaBauve v. Olin Corp.*, 231 F.R.D. 632, 665 (S.D. Ala. 2005).

Here, the claims are based on DRS's practice of leaving voicemail messages for consumers, in the course of attempting to collect consumer debt, where it failed to meaningfully disclose its identity.  Discovery has revealed that there are in excess of 180,700 members of the proposed Class in Florida and Washington alone.  As a result, numerosity is satisfied here.  *See C–Mart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679, 689 (S.D. Fla. 2014) ("Through the review of the fax records and call-detail records by Mr. Biggerstaff, its expert, obtained through discovery, C–Mart estimates that Defendants sent approximately 35,690 faxes under its class definition. This amount is large enough for the Court to presume joinder would be

impracticable.").

**B. Commonality**

Rule 23(a) also requires that there be at least one issue common to all members of the class. *Drossin*, 225 F.R.D. at 615. However, it "does not require that all of the questions of law or fact raised by the case be common to all the plaintiffs." *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 325 (S.D. Fla. 1996). The commonality element is generally satisfied when a plaintiff alleges that "[d]efendants have engaged in a standardized course of conduct that affects all class members." *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 687 (S.D. Fla. 2004).

Here, questions of law and fact are entirely common to Plaintiffs and the Class members as their claims originate from DRS's standardized debt collection policy. Thus, if brought and prosecuted individually, Plaintiffs' claims, and the Class members' claims, would require proof of the same material and substantive facts.

Of considerable importance, FDCPA claims brought as a result of standardized voicemail messages are routinely certified as class actions. *See, e.g., Manno*, 289 F.R.D. at 685 ("As to the proposed FDCPA class, commonality is satisfied here. The key question is whether [Defendant] violated the FDCPA by leaving a voice message for putative class members, during the class period, without disclosing that the communication was from a debt collector. This overriding common question, which is subject to common resolution, is enough to establish commonality."); *Hicks*, 2008 WL 5479111, at *7 ("The single issue of whether class members received phone messages that lacked information required by the FDCPA is common to the class members and predominates over any individual issue.").

Moreover, there will be no need for this Court "to delve into whether each putative class member did, or did not, have prior contact with [Defendant] and whether each class member did,

or did not, have prior knowledge that [Defendant] was a debt collector." *Manno*, 289 F.R.D. at 685. This is "because the statute requires a debt collector to identify itself on every call and whether it did so or not is decided by reference to an objective inquiry—whether the 'least sophisticated consumer' would know." *Id*. "Thus, whether [Plaintiff] or other class members were actually misled, or were subjectively unaware that [Defendant] was a debt collector, is not an individualized issue defeating commonality." *Id*. (citing *Bummolo v. Law Offices of Charles W. McKinnon, P.L.*, 2012 WL 3866485, at *3 (S.D. Fla. Sept. 5, 2012)).[4]

### C.     Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Although similar to commonality in that it concentrates on the "nexus" between class members and the named class representative, typicality differs from commonality in that it focuses on the named class representative's individual characteristics in comparison to the proposed class.  *Piazza v. EBSCO Indus. Co.*, 273 F.3d 1341, 1346 (11th Cir. 2001).

 "The test for typicality, like commonality, is not demanding."  *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996) ("The Eleventh Circuit has held that the requirement of typicality is satisfied where the interests of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent, and are based on the same legal or remedial theory; furthermore, typicality will not be destroyed by

---

[4]     *See also Savage v. NIC, Inc.,* CV 08–1780–PHX–JAT, 2009 WL 2259726, at *5–6 (D. Ariz. July 28, 2009) (holding that telephone message in which caller did not identify himself as a debt collector violated § 1692e(11), that this disclosure must be included in *all* subsequent communications, and that "[g]iven the protectionist nature of the statute, the Court finds that presuming that Plaintiffs were aware that Defendant was a debt collector would be contrary to the objectives of the statute to protect debtors, even the least sophisticated, from abusive or deceptive collection practices.").

factual variations.").  To defeat typicality, the factual variation of a class representative "must be clear and must be such that interests of the class are placed in significant jeopardy."  *In re Terazosin,* 220 F.R.D. at 686.

Here, Plaintiffs and the Class members suffered from a common practice employed by DRS with respect to the voicemail messages it leaves for consumers. Thus, Plaintiffs possess the same interests and have suffered the same injuries as each Class member and assert identical claims and seek identical relief on behalf of the unnamed Class members.  *See also Drossin*, 255 F.R.D. at 616 ("As noted above, the Act requires disclosure of the debt collector's identity, the purpose of the call, and even in subsequent communications, the Act requires that the debt collector must disclose itself as such. Therefore, the issue of whether class members received phone messages that lacked information required by the FDCPA is common to the class members and Plaintiff's claims are typical.").[5]

As a result, Plaintiffs' claims are typical of those in the Class they seek to represent.  *See Kimball*, 2011 WL 3610129, at *4 ("Kimball's claims are typical of the class because all the claims, including Kimball's, stem from the same facts, the sending of the [standardized voicemail], and the claims are all based on the same theory that the message in question violated §§ 1692e(11) and 1692d(6)."); *Drossin*, 255 F.R.D. at 616 ("As noted above, the Act requires disclosure of the debt collector's identity, the purpose of the call, and even in subsequent communications, the Act requires that the debt collector must disclose itself as such. 15 U.S.C. § 1692e(11). Therefore, the issue of whether class members received phone messages that lacked information required by the FDCPA is common to the class members and Plaintiff's claims are

---

[5]  To be sure, there is no doubt that Plaintiffs are member of the Class and that their claims are identical to those of the other members of the Class. For instance, Plaintiff Rodriguez is included in the Excel spreadsheet that DRS produced in this litigation containing contact information for the 165,708 Class members who reside in Florida.

typical.")

### D.  Adequacy of Representation

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To adequately represent a class, a named plaintiff must show that he possesses the integrity and personal characteristics necessary to act in a fiduciary role representing the interests of the class, and has no interests antagonistic to the interests of the class.  *In re Ins. Mgmt. Solutions Grp., Inc.*, 206 F.R.D. 514, 516 (M.D. Fla. 2002) (certifying class action).

As set forth above, Plaintiffs' claims are aligned with the claims of the members of the Class.  Plaintiffs therefore have every incentive to vigorously pursue the class members' claims, as they have done to date.  Plaintiffs will fairly and adequately protect the interests of the Class and are willing and prepared to serve this Court and the proposed Class.  Importantly, and as further evidence of Plaintiffs' commitment to this case and to the Class, earlier in this litigation, Mr. Rodriguez rejected an offer of judgment from DRS that offered him more than seven times his maximum statutory damages for his individual claims, but nothing for the Class. *See* Dkt. Nos. 42, 47-48.  If this Settlement is approved, he will receive significantly less than he could have received by accepting that offer of judgment, and abandoning the Class.

In addition, Plaintiffs have retained the services of counsel who are experienced in class action litigation.  Plaintiff's counsel, Greenwald Davidson Radbil PLLC, have ample experience representing plaintiffs in class actions, and are well-equipped to handle the instant litigation. *See, e.g., Esposito v. Deatrick & Spies, P.S.C.*, No. 7:13–CV–1416 (GLS/TWD), 2014 WL 4954464, at *1 (N.D.N.Y. Sept. 30, 2014) (appointing Greenwald Davidson PLLC as class counsel and granting preliminary approval of class action settlement under the Electronic Fund

Transfer Act ("EFTA")); *Donnelly v. EquityExperts.org, LLC*, No. 4:13–CV–10017–TGB–RSW, 2014 WL 4923081 (E.D. Mich. Sept. 26, 2014) (appointing Greenwald Davidson PLLC as class counsel and granting preliminary approval of class action settlement under the FDCPA); *Green v. Dressman Benzinger Lavelle, PSC*, No. 1:14–cv–00142–SJD, 2014 WL 4816698, at *1 (appointing Greenwald Davidson PLLC as class counsel and granting preliminary approval of class action settlement under FDCPA); *Ritchie v. Van Ru Credit Corp.*, No. 2:12–CV–01714–PHX–SMM, 2014 WL 3955268, at *1 (D. Ariz. Aug. 13, 2014) (appointing Greenwald Davidson PLLC as class counsel and granting final approval of class action settlement under Telephone Consumer Protection Act ("TCPA")); *Hunter v. Nicholas Financial Corp.*, No. 0:13-cv-61126-DMM, Doc. 32 (S.D. Fla. Apr. 28, 2014) (appointing Greenwald Davidson PLLC as class counsel and granting final approval of class action settlement under EFTA); *White, et al. v. Scott E. Alexander*, No. 3:12-cv-06050-RBL (W.D. Wash. Feb. 28, 2014) (appointing Aaron D. Radbil of Greenwald Davidson PLLC as class counsel and granting final approval of class action settlement under the FDCPA); *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664, 670 (S.D. Fla. 2014) (appointing Greenwald Davidson PLLC as class counsel and finding that "Plaintiff and his counsel are committed to vigorously pursuing the claims of the class members. Plaintiff's interests are also aligned with those of the class members and his selected counsel has sufficient experience representing plaintiffs in consumer class actions."). Plaintiffs therefore satisfy Fed. R. Civ. P. 23(a)(4) and 23(g).

### E.  Plaintiffs' Counsel Should Be Appointed Class Counsel

In appointing class counsel, Rule 23(g)(1)(A) requires the Court to consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types

of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit in representing the class."  Plaintiffs and proposed Class Counsel, Greenwald Davidson Radbil PLLC, will vigorously prosecute this action, as they have done to date.  In addition to satisfying the adequacy prong of Rule 23(a)(4), Greenwald Davidson Radbil PLLC also satisfies the considerations of Rule 23(g) and should be appointed as Class Counsel.

### F.  Plaintiffs Satisfy the Requirements of Rule 23(b)(2)

In addition to meeting the four requirements of Rule 23(a) and the requirements of Rule 23(g), parties seeking class certification must demonstrate that the action is maintainable under one of the three subsections of Rule 23(b).  Class certification under Fed. R. Civ. P. 23(b)(2) is appropriate because DRS, through its standardized debt collection policy, "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); s*ee also Karnette v. Wolpoff & Abramson, L.L.P.*, No. CIV.A. 3:06CV44, 2007 WL 922288, at *10 (E.D. Va. Mar. 23, 2007) (holding that "certification is appropriate under Rule 23(b)(2), and explaining that the defendant's argument "that the FDCPA does not provide for injunctive relief . . . misses the point because as Plaintiffs note, numerous FDCPA class actions seeking declaratory relief have been certified pursuant to Rule 23(b)(2)."); *Ballard v. Equifax Check Servs., Inc.*, 158 F. Supp. 2d 1163, 1177 (E.D. Cal. 2001) ("Class members in this case are entitled to a judgment declaring that ECS' practices of demanding a service charge and representing that said charge was authorized under California law violate the FDCPA."); *Woodard v. Online Info. Servs.*, 191 F.R.D. 502, 507 (E.D.N.C. 2000) (determining "that certification is proper under Rule 23(b)(2)," and granting declaratory relief under the FDCPA);

*Young v. Meyer & Njus, P.A.*, 183 F.R.D. 231, 234 (N.D. Ill. 1998) (explicitly rejecting the defendant's contention "that as a matter of law an FDCPA action cannot be certified as a Rule 23(b)(2) class action," and finding that "[a] Rule 23(b)(2) class is appropriate"); *Blum v. Fisher & Fisher*, No. 96 C 2194, 1997 WL 433630, at *1 (N.D. Ill. July 29, 1997) (holding, against the backdrop of an FDCPA class action, that "a Rule 23(b)(2) class is appropriate in hybrid cases of this nature where damages, if any, will be a formula calculation.").

## THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AS FAIR, ADEQUATE AND REASONABLE

Rule 23(e) requires that the Court make a preliminary determination of fairness:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION §21.632 (4th ed. 2004); *see also* 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, §11.25 (4th ed. 2002). After the preliminary fairness evaluation has been made, the class has been certified for settlement purposes, and notice has been issued, the Court holds a final fairness hearing to show that the proposed settlement is truly fair, reasonable, and adequate. *See* MANUAL FOR COMPLEX LITIGATION §21.633-34; 4 NEWBERG, *supra* at §11.25.

Preliminary approval requires only that the Court evaluate whether the proposed settlement: (1) was negotiated at arm's-length, and (2) is within the range of possible litigation outcomes such that "probable cause" exists to disseminate notice and begin the formal fairness process. *See* MANUAL FOR COMPLEX LITIGATION §21.632-33; *Clark v. Ecolab, Inc.*, 2009

WL 6615729, at *3 (S.D.N.Y.  Nov. 27, 2009) (noting that preliminary approval of a settlement agreement requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and, in some cases, an informal presentation by the settling parties.). The Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial*." In re Mexico Money Transfer Litig.*, 164 F.Supp.2d 1002, 1014 (N.D. Ill. 2000).[6]

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness and adequacy of a class action settlement under Rule 23(e): (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.  *Leverso v. SouthTrust Bank of AL.*, N.A., 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Each relevant factor supports the conclusion that the settlement here is fundamentally fair, adequate, and reasonable.

**I.     There was no fraud or collision behind the Settlement.**

As the Court is well aware, the parties engaged in hotly contested litigation for the better part of a year.  The litigation involved extensive discovery, and numerous discovery disputes that required court intervention.  *See, e.g.,* Dkt. Nos. 27, 30-31.  The Settlement was reached only after the parties exchanged significant written discovery, after Plaintiffs took depositions of the

---

[6]     Courts often grant preliminary settlement approval without requiring a hearing or a court appearance.  *See Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 1058409, at *1 (S.D.N.Y, Mar. 12, 2012) (granting preliminary approval based on plaintiffs' memorandum of law, attorney declaration, and exhibits); *Esposito,* 2014 WL 4954464, at *1 (same.

corporate representatives of DRS, and following numerous discussions between Plaintiffs' counsel and DRS's counsel regarding the claims.  The Settlement is not a product of collusion and was the result of arm's-length settlement negotiations when each party had a view as to the strengths and weaknesses of its position.

## II.     The complexity, expense and likely duration of the Litigation favors settlement.

There exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002); *Access Now, Inc. v. Claire's Stores, Inc.*, 2002 WL 1162422, at *4 (S.D. Fla. 2002) (both citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977)).  "Courts consistently recognize that the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement, especially in a securities class action."  *In re Advanced Battery Technologies, Inc. Sec. Litig.*, 298 F.R.D. 171, 175 (S.D.N.Y. Mar. 24, 2014).   By their very nature, because of the uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise.  Indeed, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (public interest in settling litigation is "particularly true in class action suits . . . which frequently present serious problems of management and expense").

This case was no different.  DRS was defending, and proposed Class Counsel was litigating, two different class actions in two different states on opposite sides of the country.  The parties had engaged in significant motion practice, and multiple motions were pending before

this Court, including Plaintiff Rodriguez's motion to compel appearance at deposition, production of documents, and for an order to show cause as to why DRS should not be further sanctioned, Dkt No. 40, and Plaintiff Rodriguez's renewed motion for class certification.  Dkt. No. 49.  The parties were set to go to mediation before a private mediator in December 2014.  In light of the foregoing, settlement was warranted.  *See, e.g., Bennett,* 96 F.R.D. at 349–50 (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers ... to the vagaries of a trial").

### III.   The factual record is sufficiently developed to enable Plaintiffs and Proposed Class Counsel to make a reasoned judgment concerning the Settlement.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that counsel had an adequate appreciation of the merits of the case before negotiating.  *In re Checking Overdraft Litigation*, 830 F.Supp.2d 1330, 1349 (S.D. Fla. 2011). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations*." Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

Here, the Litigation had been ongoing for the better part of a year.  DRS had produced several hundred pages of documents in response to discovery requests, including confidential financial documents, and proposed Class Counsel took the depositions of DRS's Chief Financial Officer and also of its Vice President of Operations.  During that time, the parties engaged in extensive motion practice through the close of class certification discovery, and Plaintiff Rodriguez had filed his renewed motion for class certification.  The Settlement was, therefore, consummated when the parties had a good view towards the strengths and weaknesses of their respective positions.  *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala.

21

1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which "to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

### IV.   The probability of Plaintiffs' success on the merits and the range of possible recovery.

The Court must also consider "the likelihood and extent of any recovery from the defendants absent ... settlement." *In re Domestic Air Transp.*, 148 F.R.D. 297, 314 (N.D.Ga.1993); *see also Ressler*, 822 F.Supp. at 1555 ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise.").   In determining whether a settlement is fair in light of the potential range of recovery, the Court is guided by the important maxim that the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate. *In re Checking Overdraft Litigation*, 830 F.Supp.2d at 1350.  This is because a settlement must be evaluated in light of the attendant risks with litigation.  *Id.*   These factors also weigh in favor of the Settlement here.

The parties had numerous discovery disputes, disagreed about the merits, and there is uncertainty about the ultimate outcome of this litigation and whether a class would be certified. For instance, as set forth above, Plaintiffs, even had they obtained class certification and won at trial, were severely limited in what they could have recovered for the Class in light of DRS's low net worth and the FDCPA's cap on statutory damages. Had this matter proceeded as a contested matter and had Plaintiffs prevailed on all issues, the following relief could have been awarded: (a) up to but no more than $1,000 in statutory damages to each named Plaintiff; (b) a discretionary incentive award to each named Plaintiff; (c) less than fifteen cents per putative class member in statutory damages; and (d) Plaintiffs' reasonable attorneys' fees and costs. Such

relief would have only been obtained if Plaintiffs proved liability.  Such recovery would not be sufficient to justify a class wide distribution, especially when taking into account the costs of administering such a settlement.  Indeed, the cost of a postage stamp to mail a settlement check would dwarf the amount of the check itself.

By settling, Plaintiffs secured prospective relief by way of an injunction, brought about an early resolution to the litigation, limited attorneys' fees and costs, obtained nationwide injunctive relief prohibiting DRS from engaging in the complained of practice in the future, and also obtained a *cy pres* award for a legal aid organization that devotes significant resources to helping consumers.  *See In re Advanced Battery Technologies, Inc. Sec. Litig.*, 298 F.R.D. at 178 ("While Lead Counsel believes in the merits of the case, Defendants surely would have raised vigorous challenges to class certification. Moreover, even if the Class were certified, Defendants may have moved to decertify the Class before trial or on appeal at the conclusion of trial, as class certification may always be reviewed.…Given such risk, this factor weighs in favor of approval of the Settlement.").  As set forth above, injunctive relief may not have been available to Plaintiffs under the FDCPA were they to succeed in litigating this matter as a contested case. Given the damages cap applicable to FDCPA classes, the relief provided for in the settlement here is substantial, and is well in line with that provided for in other FDCPA class settlements. *See, e.g., Catala v. Resurgent Capital Services L.P.*, 2010 WL 2524158, at *3 (S.D. Cal. Jun. 22, 2010) (approving FDCPA settlement of $35,000 distributed *cy pres*, with no payment to class members); *Reade–Alvarez v. Eltman, Eltman & Cooper, P.C.*, 2006 WL 3681138, at *7 (E.D.N.Y.  Dec. 11, 2006) (approving FDCPA settlement of $45,000 *cy pres* payment, with no payment to class members).

V.       **The opinions of Class Counsel and the Class Representatives**

Proposed Class Counsel is experienced in class action litigation, having litigated consumer protection cases on a class-wide basis in many jurisdictions.  *See, e.g., Esposito*, 2014 WL 4954464, at *1); *Donnelly*, 2014 WL 4923081, at *1; *Green*, 2014 WL 4816698, at *1; *Ritchie*, 2014 WL 3955268, at *1.  Both Plaintiffs and Class Counsel believe that the Settlement is fair, reasonable, and adequate, and in the best interests of the Class.

Further, a strong initial presumption or fairness should attach to the proposed Settlement because it was reached by experienced counsel after arm's-length negotiations. Courts accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.  *See Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement."); *In re Domestic Air Transp.*, 148 F.R.D. at 312–13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel; *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

**CONCLUSION**

Plaintiffs respectfully request that the Court enter the Order granting preliminary approval of the above-described class action settlement, which Order is submitted herewith.  As noted, DRS does not oppose the relief requested herein.

Dated: January 5, 2015

By:  */s/ James L. Davidson*

James L. Davidson
Michael L. Greenwald
Aaron D. Radbil
**GREENWALD DAVIDSON RADBIL PLLC**
5550 Glades Road, Suite 500
Boca Raton, FL  33431
Telephone:  561-826-5477
Facsimile:  561-961-5684
jdavidson@gdrlawfirm.com
mgreenwald@gdrlawfirm.com
aradbil@gdrlawfirm.com

Attorneys for Plaintiffs and the proposed Class

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was filed using the Court's CM/ECF

system, on this 5th day of January, 2015, which will send notice to Defendant's counsel of

record:

DALE T. GOLDEN
CHARLES J. MCHALE
Golden Scaz Gagain, PLLC
201 North Armenia Avenue
Tampa, FL 33609
dgolden@gsgfirm.com
cmchale@gsgfirm.com

Counsel for DRS

*/s/ James L. Davidson*
James L. Davidson

25